on behalf of Mr. Strathman. Mr. Strathman admitted at the time of the arrest and during his trial testimony that he knew he was smuggling something, but not somewhat. Where was this person being smuggled? In the dashboard of the vehicle. In the dashboard. I'll ask the same question Judge Rustani asked. How do you get, we now know how you get somebody in a gas tank. How do you get somebody in a dashboard? Well, that's one of the points I'm going to make. It's so unusual that Mr. Strathmore, when told you're smuggling something in the dashboard, would have no idea that a person is going to be there. And that's one of the reasons why a JUUL instruction is so inappropriate in this case. Because a JUUL instruction has to relate to a high probability of a specific fact. Meaning, he knew he was smuggling something, but there had to be a high probability that an individual was going to be in that van or in the dashboard area for there to be a JUUL instruction. But he was told there was something in the dashboard, but not what it was? Correct. And he, his testimony. That's what he says. That's what he says. That's what he said to the case agent at the time of the arrest. That's what he said when he was on the stand. Let me make sure I understand this. He didn't say, I knew something was in the car, but I didn't know what it was. He said specifically, I knew there was something in the dashboard, but I didn't know what it was? That's specifically what he was told, and that's what he said. Okay. That I was told I'd be smuggling something, that something was going to be in the dashboard. And so this Court has repeatedly said in different opinions that to get the JUUL instruction, there has to be a high probability, and I'm quoting from Alvarado, of the existence of the fact in question, and purposely contrived to avoiding learning all the facts in order to have a defense at trial. There's simply, based on just being a dashboard, no high probability aware to Mr. Strathmore that that was going to happen. There's much more high probability that this was going to be drugs, although he asked specifically not to be smuggling drugs. I think if drugs were found, clearly a deliberate ignorance instruction would have been appropriate at that point, because it's reasonable and a high probability that drugs would have been there. So he told the smugglers no drugs. Correct. And they said, okay. Eliminate drugs. So what else is it? Bicycles? It could be anything. It could be. I mean, isn't it a matter of common knowledge that most of the smugglers either drugs or people? Not necessarily, because there's birds, there's parrots. We've had tons of mullet cases of people smuggling mullet, cigars, all types of other merchandise, alcohol. It could be cash. These are all things that get smuggled across the border on a daily basis. So just because it's not drugs, there's a wide variety of other things it could have been. There's testimony in this case, right, that the person was actually visible through the vents? What the testimony is of the secondary agent is that when she sat in the passenger side and applied a flashlight into the passenger vent and the middle vent, that she could then see denim or some type of cloth in each of those. There's and she what she said is the vent, the furthest, the closest vent to the driver's side where Mr. Strathman was driving was an arm's length from the driver's side. So the only places where she was able to see, first she had to use a flashlight. And second, they were not within the vision realm of the driver of the vehicle. Second, the defense investigator testified in this case that he went and did an inspection of the vehicle, was able to put the dashboard back together and put cloth inside the area. And if he looked without light, he could not see denim. It took a flashlight to see some type of cloth. And there's a testimony from the alien that she spoke with the driver, right? There, yes, but that's in dispute. What happened, there's also a stipulation from the. I just want to, is there testimony from the alien that she gave on the stand that she spoke with the driver? That she spoke with someone after she was in the compartment. Yes. Who else was in the car besides the driver? The testimony on how, the way Mr. Stratman testified how he got into the car was that the smuggler came at a stop sign and he simply got into the car at a stop sign. But the testimony of this alien was contradicted in several ways. First of all, first of all, logistically, it could have been the other person that drove. Did somebody testify that there was somebody else in the car? Mr. Stratman did. That there was another driver in the car and it was driving. It drove to a stop sign and he got in the car at the stop sign. And the other person got out. Yes. That is the testimony. During, okay. So it's possible. But the other thing is, during her post-custody interview, the material witness never mentioned that anyone spoke to her. And this was a stipulation from the notes of the inspector that interviewed her. So it was, you know, her statements about, you know, she spoke to someone, came up for the first time at trial, and was contradicted by her initial interview with the agents. So your argument is there's both insufficient evidence for actual knowledge as well as constructive knowledge. No. I'm not arguing that they couldn't have submitted actual knowledge to the jury. I would argue that it's not harmless beyond a reasonable doubt for doing the jewel. Okay. So there is something that could have been argued both ways. The government just didn't, should not have introduced the jewel instruction here. Let me ask you this, and I'm not sure it goes directly to the jewel instruction question. You said two things that were slightly in conflict. You said that the smuggled person in her initial interview did not mention having spoken to anyone in the car. And then you said at trial she contradicted this by saying that she had spoken. Now, not mentioning and later mentioning is not a contradiction. Correct. And again, I'm not arguing that they should not have been able to argue knowledge to the jury. So let me make sure. You said contradiction, but you didn't mean contradiction then. You merely said she made the story better. There was no omission. There is at least an omission by her at the time of the port of entry. I understand that that weakens it, but it's not a contradiction. Okay. I'd have to look more closely over the record to say if there's an actual contradiction. I know there's at least an omission. Okay. But, anyway, even if the deliberate ignorance instruction was appropriate, the case must say it was appropriate to give this deliberate ignorance instruction. Then, if that's true, Mr. Levitt should have been entitled to a lesser included offense for the misdemeanor of simply knowing that there was someone in the vehicle. Here, the only difference between the misdemeanor offense of bringing someone to the border, knowingly bringing someone to the border, and then the felony, which he got a minimum mandatory three years for, is the specific intent to violate the immigration laws. And what the argument is here is since knowledge in this case could have been based on the jury instructions, on a high probability of that an alien's in the vehicle, and failure to do something to disclose it, it does not necessarily follow that Mr. Levitt would have had the intent to violate the immigration laws. Indeed, he testified that he had the intent to violate the customs laws, which is not the intent required for the 1320, for the felony conviction. So the jury could have come to the conclusion, well, there's a high probability of an alien, but, and he did nothing to do it. So he knew under these instructions, but still believe him, well, he may have believed that he had the intent to violate the customs laws because he thought it was something  Assuming for the moment that the Juul instruction was properly given, and I understand that's a dispute, but assuming for the moment that the Juul instruction was properly given, what does the jury conclude if they conclude that Mr. Strathman was willful or ignorant? Do they conclude that it was beyond a reasonable doubt that he knew, that is to say, the constructive knowledge, or is it something, a lesser standard that they conclude from that? Well, what they conclude is knowledge, their instructed knowledge can be found by a high probability that a person was in the car and taking purposeful actions to avoid finding out whether or not that's true. I understand that. And that's what constitutes knowledge. I understand. And the knowledge that they find, is that knowledge found beyond a reasonable doubt? I understand that you find knowledge. I find those two, high probability and avoidance beyond a reasonable doubt, yes. But the knowledge that they then conclude, I think that knowledge is beyond a reasonable doubt knowledge. Correct. Yeah. But it's not actual knowledge. But it's beyond a reasonable doubt knowledge. And that takes you into, so I don't think it's, the ultimate conclusion the jury draws as to knowledge of the presence of the alien is not a high probability conclusion. It is rather, assuming the dual instruction was properly given, it's a beyond a reasonable doubt knowledge. It's knowledge. But I will concede that if someone actually knew that an alien was in the car, that I wouldn't be able to argue he should have gotten a lesser included offense that he didn't intend to bring that alien in violation of immigration laws. But if the knowledge element, even proven beyond a reasonable doubt, is based on just a high probability combined with deliberate actions to avoid, then it doesn't necessarily follow that you have the intent to violate the immigration laws. Because there could have been a high probability of many different things. Drugs could have been, merchandise, and either of those you would not have an intent to violate. I understand. But I think you keep retreating back into the mechanisms of the dual test rather than to the conclusion that the dual instruction invites the jury to come to. And the conclusion that the dual instruction invites the jury to come to is knowledge beyond a reasonable doubt. Yes, but it's not actual knowledge. It's still even – it just proves the element of knowledge, but it does not constitute a finding of actual knowledge. Okay. I understand. And so I have to – Why don't we hear from the government and then we'll give you time. Thank you. Good morning, Your Honors. May it please the Court, my name is Shanna Doherty and I represent the United States from the Southern District of California in this case. As Your Honors have gotten right to the point, the question of whether the deliberate ignorance instruction was appropriate in this case, it's difficult when you look at the How any case could be more primed for the deliberate ignorance instruction than this particular case. What's the distance door to door in this van? That is, I'm trying to figure out how likely it is that anybody would have been in the dashboard and how likely it is that Mr. Strathman would have thought that it's possible that there was a person in there instead of bicycles or something else. I don't honestly know, obviously from my perspective of arms width, how big it would be. I think there was testimony actually that it was – you could see if he opened his arms, you could – the vent, the middle vent where you could see the shirt and the van was within like his reach of going up to that sort. If you mean the space of the compartment itself. I'm just trying to figure out how big is the physical space if you're just in that van and somebody says – 20 questions. Something or someone or X is being smuggled in the dashboard. What do you think it is? Would somebody think, you know, that's big enough that maybe there's a person in there? In this particular type of vehicle, the Plymouth Voyager van, it's a long – the whole entire – there's the steering column and then there's a long area where normally a glove box would be. Okay. But I'm asking a question to which I don't know the answer and it may or may not be in the record. Do we know how many feet or inches it is door to door? That is to say how much space it is vertically or maybe horizontally where the person has to lie down in? How much do the knees have to be scrunched? Do we know that dimension? I don't believe the dimensions itself, at least not that I can recall off the top of my head. However, the government did submit the photograph of the alien in the compartment where you can see the length of it and you can see her clothing through the vent and her jeans through the vent. But perhaps the most important part of this particular – I guess I – you know, I really have a hard time visualizing this. Is the picture in the excerpts? It is, Your Honor. Maybe I – It's in the government's documents. Okay. Because we never got an answer to Judge Trott's question as to how they do this, how they put the person in there and – I believe it's sort of a close-up view. It's on 123 and 124. The 123 is the closed compartment, and the 124 is visualizing the actual Ms. Lopez inside of the compartment. But I believe what they do is actually gut the inside of that area. There's loose wiring and all that sort. They remove that out. There's a little bit of padding in there, and the person basically just climbs in. They shut the compartment on top of them, and they're basically in a little mini moving coffin in the front of the vehicle. Moving coffin? Basically, it's laid out like a coffin. They just get in there, and it's closed up. You could have said that. Okay. Okay. Okay. So I see her head's over towards the passenger side door, and then her legs continue in back of the instrument panel. Correct. Okay. More particularly important in this case is the individual that we were dealing with. By his own testimony, he says he knows the location of where it is he's smuggling. I believe, Justice Fletcher, as you pointed out, it's the two most common things. By his own testimony, That was my colleague, Judge Trott, and we're not justices. I'm sorry. I apologize. He's to the State court. In this particular case, he knew aliens and drugs are the two most common things smuggled. He says, I told them adamantly over and over again, not drugs. They assured me it's not drugs. What is that left with is that it's a person in there. Now, you say he knew the two most common things are. Do we have anything beyond our sort of gut instinct as to what a reasonable person would know? Did he say, I know the two most reasonable things are drugs and likely things are drugs and people? He was asked on cross-examination, what are the two biggest things that are smuggled into the United States, drugs and people? And he admits, yes, that's what I knew. Okay. So we know specifically that he knows that. Not parrots, not chicken mole. Right. Not cigars. He admitted that. And he also admitted long-time resident of Oceanside, common knowledge that you get paid if you go down to Mexico, hang out for a while. Someone will approach you, give you money to smuggle. He's working with a known common smuggler. This is a perfect case where the defendant goes right up to the very point of saying he knew, but then says, oh, I didn't take that final step. I didn't look through those vents. I didn't ask any questions. I wanted to know absolutely as little as possible, and that's what he did. And in this particular case, I know defense counsel argues that it's a reasonable jury can maybe infer that he didn't have the intent to violate the immigration laws. This particular individual intended to violate every law under the sun. He didn't care. He wanted his $200, and he wasn't going to ask any questions. He wasn't going to make any inquiries for himself. He basically said, I know that's the law. I'm not supposed to take people across the border of the United States. I know that people are smuggled across the United States for money, but I'm not going to ask that question, but I'm going to smuggle whatever is in that vehicle. I don't care what it is. Well, that's not quite true. I'm not sure this is harmful to your case. He said, I don't want to do drugs. He didn't say, I'll take whatever. He said, I don't want to do drugs. And I believe it came out because he was concerned about the penalties for drugs. Of course. But as Your Honor pointed out, I don't think that affects this case. He had no care in the world for violating those immigration laws, and he intended to do his act, and he did. Is there a sentencing issue in this case? I think, although it wasn't briefed by the parties, and I do have the site and the record, I believe in this particular case, Judge Miller made an alternate finding. It was post-Blakely, but that's about where we were at the time. He gave the minimum mandatory sentence for the financial gain count. As for the transport, under the guidelines, I believe he gave the low end, which was 33 months. The parties agreed not to fight over it, but said, I'm making an alternate holding. If the guidelines are determined to be, you know, nonbinding, I would sentence him to the same of midman, which would be the 36 months. I guess really the question is whether the other side wants to remand for resentencing. We'll find out. Perhaps that's the question. No further questions. Thank you. On sentencing, it seems that we know what's going to happen, don't we, if we send it back? The sentence is bound by the minimum mandatory, and we're not requesting a remand for sentencing unless the Court, for some reason, and I don't think it's applicable here, reversed on the midman counts, but somehow did not reverse on the others. If that were the case, yes, I believe a full remand is appropriate, but based on the issues that we've discussed mostly today, that it's a package deal. All four convictions get reversed if the jury was misinstructed. Just to be clear, if we affirm the convictions across the board, you don't want a remand for resentencing? I don't think he's entitled to one because the sentence wasn't compelled by the guidelines.  Okay. Thank you, counsel. But just going to the specifics of what Mr. Strachman was told or thought, it was always you're going to be smuggled something. Someone was never mentioned. He never ---- The other side says, but he admitted that he understood that drugs and people. He understood, in a general sense, I think we all understand that drugs and people  when someone tells you you're going to be smuggling something in the dashboard of the vehicle, that there's a high probability that that's going to be a person. Those are two different equations. And that's the thing. There is nothing about the circumstances of this case, about what the other individuals did that indicated in the conditions of the car that indicated that a person was going to be in there. It strikes me this is exactly the kind of case that requires the instruction that you're going to be smuggled. Because he just, he said, look, I don't, please, don't burden me with the knowledge of exactly what it is I'm smuggling. And then he admits that he knows it's drugs and people. There's one in two items that get smuggled. He just doesn't want to ride the drug penalties. But he's willing to ride the alien smuggling penalties. Quite honestly, Your Honor, if drugs were in that car, then I do believe a dual instruction would have been appropriate in a drug case, because the circumstances of the case, I think he was deliberating. I don't want to smuggle drugs and I don't want to know what's in there, because most likely, based on the circumstances, there's a high probability there's drugs or merchandise in that car. It's different when you're involved, when you're dealing with a specific intent crime of having to intend to bring an alien into the country to say, okay, I know I'm convicted of a specific intent crime of smuggling a person into the United States. And that's why either the instruction here was there more tailored to knowledge rather than intent. Yeah. But it has the combined element. And that's why my main argument is either the dual instruction should not have been given or he should have been given a lesser included offense instruction. He should have testified at trial. He should have said, I told him I don't want to do drugs. But truthfully, I didn't believe him. I thought there were drugs. If that's the case, though, they'd still be arguing for a dual instruction. Okay. Thank you. Thank you very much. Thank you both for your argument. The case of the United States v. Strassman has now been submitted for decision. The next case on the argument calendar is, well, we've seen a version of him before, United States v. Mr. Leavitt.
judges: Trott, W. Fletcher, Restani